Golcher v. Brisbin.

---

## WILLIAM GOLCHER

*vs.*

## JOHN B. BRISBIN AND MARGARET M. BRISBIN.

*Chapter* 60, *Laws* 1870, which requires every *action* to foreclose a mortgage upon real estate to be commenced within ten years after the cause of action accrues, has no application to foreclosure by advertisement.

In a notice of foreclosure sale upon advertisement, the place of sale was designated as "at the court house, in the city of St. Paul." *Held,* that while the designation is more indefinite than it should be, it is sufficient to uphold the sale, in the absence of any evidence of fraud or unfairness, or actual or probable injury.

The certificate of foreclosure sale in this case, considered, and held to contain a description of the mortgage under which the sale is made. The affidavit of foreclosure sale in this case, held to be defective, in failing to state that the notice was published once in each week, and in misnaming the newspaper in which publication was had.

The *fact* of proper publication appearing, *held* that the publication was sufficient, notwithstanding the defects of the affidavit, neither the affidavit nor its record being made necessary to the validity of the title of a purchaser at the sale.

At the time when the mortgage to which this action relates was made, in September, 1857, the title of record to the mortgaged premises was in A. B., by whom, (her husband, J. B. B. joining,) the mortgage was executed, and the title to said premises has never since been of record in the name of J. B. B. The mortgage was recorded December 9, 1870, and the foreclosure sale occurred February 4, 1871. Judgments against J. B. B. were docketed May 25, 1860; August 7, 1868; May 25, 1870; August 26, 1871; January 11, 1872, and March 26, 1872. A. B. died December 3, 1863, intestate, leaving brothers and sisters her heirs at law. *Held,* in

view of *sec. 54, chap.* 35, *Pub. Stat.*, and *sec.* 21, *chap.* 40, *Gen. Stat.*, that as the title to the premises never appeared of record in the name of J. B. B., his right being only that of a tenant by courtesy, the judgment liens upon his estate by the courtesy, (if any there were,) were extinguished by the foreclosure. *Held,* further, that the premises having been purchased at the foreclosure sale by M. M. B., (the present wife of J. B. B.,) and the title thereto having remained in her ever since, said judgments are not a lien thereupon. *Held,* further, that so far as the publication of notice of foreclosure sale is concerned, the title of the defendants to the premises in question is sufficient to enable them to fulfil their contract with plaintiff, to deliver a good and sufficient warranty deed from them to plaintiff, together with an abstract of title to said real estate, showing a clear title to the same in the defendants, free and clear of all incumbrance.

The plaintiff brought this action in the court of common pleas for Ramsey county, to recover the sum of two hundred dollars, paid to the defendants upon a contract for the sale and purchase of real estate in Ramsey county, under an agreement that it should be refunded on demand, in case the title to the real estate was not good in the defendants, free and clear from all incumbrances. The action was referred, and the following facts, agreed upon by the parties, were found by the referee.

On the 2d of September, 1857, Almira Brisbin, wife of the defendant, John B. Brisbin, was the owner in fee, clear of all incumbrances, of the land described in the complaint, and on that day, she and her husband mortgaged the same to Oliver Brisbin, father of John B. Brisbin. The mortgage contained the usual power of sale, and was duly recorded, December 9, 1870. The note described in the mortgage matured May 15, 1859.

On the 3d of December, 1863, Almira Brisbin died, intestate, leaving brothers and sisters, her heirs at law.

On the 12th December, 1870, the mortgagee commenced proceedings for foreclosure by advertisement, and caused a

notice to be published in a newspaper published at St. Paul, in said county, in which the mortgage was correctly described, and the place of sale was specified as " at the court house, in the city of St. Paul."

The affidavit of publication of this notice, duly filed and recorded, with the notice attached, is as follows :

STATE OF MINNESOTA, }
County of Ramsey. }

John C. Devereux, being duly sworn, deposes and says that the annexed printed copy of mortgage sale was published in the Saint Paul N. W. Chronicle, a newspaper printed in the city of St. Paul, county of Ramsey, and state of Minnesota, for the period of six successive weeks. That the first publication of the said advertisement was made on the twenty-third day of December, A. D. 1870, and the last publication thereof was made on the fourth day of February, A. D. 1871, and that during the whole time of said publication he was publisher of the said newspaper. (Signature and jurat.)

The notice was, in fact, published for six successive weeks, at least once in each week, during the time stated in the affidavit, in a newspaper printed and published in Ramsey county, called the " Northwestern Chronicle," which newspaper was intended by the term " N. W. Chronicle," used in the affidavit, and neither at that time, nor since, was there any paper printed or published in Ramsey county, called the " N. W. Chronicle."

Pursuant to the notice, the mortgaged premises were sold to the defendant, Margaret M. Brisbin, who is the wife of John B. Brisbin, by the sheriff of Ramsey county, who made affidavit, stating that on February 4, 1871, he was, and now is sheriff, &c., and " that on said 4th day of February, 1871, upon proof of publication hereto annexed in affidavit of John C. Devereux, he did, at the time and place, and in the manner

stated in the notice contained in said affidavit, offer at public auction to the highest bidder, * * * and did thereupon sell the said property to Margaret M. Brisbin, she being the highest bidder, for the sum," &c.  The sheriff's certificate of sale stated the sale to Mrs. Brisbin, and the time for redemption, and also that " such sale was made in pursuance of, and upon proof of the following notice which contains a true descrip-· tion of the mortgage sale," (being an exact copy of the notice above mentioned.)  This certificate and the affidavit of the sheriff were duly recorded.

. Judgments were recovered and docketed in Ramsey county against John B. Brisbin, on the following dates, all which judgments remain unpaid: May 25, 1860, August 7, 1868, May 25, 1870, August 26, 1871, January 11, 1872, March 26, 1872.

On the 21st February, 1873, the defendants, by a contract in writing, bargained and sold, and agreed to convey to the plaintiff the land described in the complaint, one third of the purchase money to be paid in hand, on the delivery of a good and sufficient warranty deed, together with an abstract of title, showing a clear title in the defendants, free and clear of all incumbrances, which deed, it was agreed, should vest in the plaintiff a clear title in fee, free from all incumbrances.

Thereupon the plaintiff paid to the defendants the sum of two hundred dollars, (which this action is brought to recover,) to apply on such payment in hand, and which the defendants were to refund to the plaintiff on demand, in case the title was not good in the defendants, free from all incumbrances.

Pursuant to the contract, the defendants submitted to the plaintiff an abstract of title, disclosing the title above set forth, and no other, and were at all times ready and willing to execute and deliver to the plaintiff a deed of conveyance, with the usual covenants of seizin and warranty.  The plaintiff,

not being satified with the title of the defendants, disclosed by the abstract, demanded a return of the two hundred dollars, which was refused.

As a conclusion of law, the referee finds that the foregoing statement of facts discloses a good title in fee, free from all incumbrances, in the defendants, that a deed from them will vest in the plaintiff a good title, and that therefore the plaintiff is not entitled to recover. Judgment was accordingly entered for defendants, from which the plaintiff appeals.

GEO. L. OTIS, for Appellant.

JAMES GILFILLAN, for Respondents.

*By the Court.*—BERRY, J.—I. The foreclosure under which the defendants make title to the premises in question in this case, is claimed by the plaintiff to be void, first, because the proceedings were not commenced until more than ten years after the right to foreclose accrued. This claim is based upon *chap.* 60, *Laws* 1870, which amends *sec.* 11, *chap.* 66, *Gen. Stat.*, so as to make the same read as follows : " Sec. 11. Every action to foreclose a mortgage upon real estate, shall be commenced within ten years after the cause of action accrues." This act has reference to *actions* only, as is apparent from the language, " Every action," &c., as well as from the fact, that it is amendatory of the chapter of the general statutes which relates to civil actions. And as an action is a judicial proceeding, the term, " action," obviously fails to embrace the proceedings in a foreclosure by advertisement.

II. The second objection to the foreclosure is, that the only designation of the place of sale, in the notice of sale, is as follows, viz. : " At the court house, in the city of St. Paul," and that this is too indefinite and uncertain to satisfy the

VOL. XX.—58

statute, which requires that the notice " shall specify * * the place of sale." *Gen. Stat. chap.* 81, *sec.* 6.

It is said that the court house contains several separate apartments, and that, under this notice, a sale might take place in any one of them, so that persons desiring to attend the sale would not know where to go. But in the first place, we cannot take judicial notice of the manner in which the court house is constructed. For aught that appears, its construction may be such that a sale could not take place " at the court house," without sufficient publicity. Secondly, if it be assumed that the court house consists of several distinct apartments, so that a notice of a sale " at the court house," would give no information as to the particular apartment where the sale is to be had, and assuming still further, that the construction of the court house is such that a sale *may* take place thereat, and in some part thereof, so privately and secretly as not to be, in any proper sense, a sale " at public vendue," within the intent of the statute, (*sec.* 7, *chap.* 81, *Gen. Stat.*,) still, in the absence of any evidence that it did so take place, or any evidence of fraud or prejudice, the presumption would be, that the sheriff of Ramsey county, (who made this sale,) a public officer, empowered by statute to make sales of this kind as a part of his official duty, would and did conduct this sale at such place, " at the court house," as the proper discharge of his duty would require, and with such publicity and fairness as to afford any person an opportunity, in the exercise of ordinary diligence, to attend the sale.

The notice of sale in this instance is certainly more indefinite than is consistent with a due regard to the convenience of persons desiring to attend the sale, and with a proper consideration of the prejudice, which might possibly result to the mortgagor, and other parties interested in the mortgaged property ; still, as it cannot be said that the notice does not

Golcher v. Brisbin.

specify a *place* of sale, (notwithstanding the specification is somewhat indefinite,) and as no fraud or unfairness, or actual or probable injury is shown, we are of opinion that the notice cannot be held insufficient to uphold the sale.

III.  It is further contended that the sheriff's certificate of sale is insufficient, and not in conformity with the statute, because it does not contain " a description of the mortgage, under which such sale is made," as expressly required by *sec.* 11, *chap.* 81, *Gen. Stat.*

The certificate among other things, states that " such sale was made in pursuance of, and upon proof of the due publication of the following notice, which contains a true description of the mortgage sale." Then follows a copy of the notice of sale, drawn up in compliance with the statute, and therefore containing, among other things, a description of the mortgage.

Now in the first place, we are by no means prepared to say, that if it were necessary, there would be any impropriety in rejecting the word, " sale," in the phrase, " mortgage sale," as evidently placed there by clerical inadvertence. But without regard to the practicability of this course, we are of opinion that, taken as it reads, the certificate, though certainly awkward, may well be sustained. The notice, in describing the mortgage sale, that is to say, in pointing out to what the sale relates, has described the mortgage under which the sale is to be made. Such being the fact, when the certificate of sale states that the notice, in pursuance of which the sale was made, contains a true description of the mortgage sale, *i. e.*, of the sale which was to take place, it cannot be assumed to mean less than that the description of the mortgage found in the notice, being *part* of the description of the mortgage sale, is true. In other words, the effect of this statement of the certificate is, that the notice contains a true description of the

mortgage under which the sale is made, and that, therefore, the certificate, of which the notice is made a part, contains the same.

IV. The affidavit of the publication of notice of sale, was as follows, viz.:

STATE OF MINNESOTA, ⎰ ss.
  County of Ramsey. ⎱

John C. Devereaux, being duly sworn, deposes and says that the annexed printed copy of mortgage sale was published in the St. Paul N. W. Chronicle, a newspaper printed in the city of St. Paul, county of Ramsey, and state of Minnesota, for the period of six successive weeks. That the first publication of the said advertisement was made on the twenty-third day of December, A. D. 1870, and the last publication thereof was made on the fourth day of February, A. D. 1871, and that during the whole time of said publication, he was publisher of the said newspaper.

(Subscribed and sworn to.)

The referee finds that this affidavit, with the notice attached, was duly recorded, and further finds "that said notice was in fact published for six successive weeks, during the time stated in said affidavit, at least once in each week, in a newspaper printed and published in said Ramsey county, called the North-Western Chronicle; and by the term, 'N. W. Chronicle,' used in said affidavit, was intended the said 'Northwestern Chronicle,' and that there was not then, and is not now, printed or published in said county any newspaper called the 'N. W. Chronicle.'" While, then, it appears that the notice was in fact published, as required by statute, the affidavit of publication is clearly defective, for the reason, apparent upon its face, that it does not show that the notice was published at least once in each week. It does not even show that the newspaper was a weekly paper, so as to afford a basis for an

inference, that a publication for six *successive* weeks was a publication once in each week.  It is also further defective, as appears by extrinsic evidence, in misnaming the newspaper in which the publication was had, though it may be that this defect would be overlooked, as merely clerical and not sub-stantial.  It is also noticeable that the affidavit does not state that the newspaper was published, as well as printed, in Ramsey county.  See *Gen. Stat. chap.* 81, *sec.* 5.  In the view which we take of this case, however, these defects are only important to be mentioned with reference to correction in the new affidavit, which it is to be presumed that the defend-ant will procure and place upon record, in the exercise of reasonable prudence, and out of a desire to furnish to the plaintiff presumptive record evidence of proper publication. *Gen. Stat. chap.* 81, *sec.* 20 ; see *Goenen vs. Schroeder,* 18 *Minn.* 74.

In the case at bar, it is only necessary to say, that so far as the *fact* of good title in defendants, under the foreclosure sale, is concerned, it is the *fact* that the publication was made ac-cording to law, as found by the referee, which is important. An affidavit of publication is made presumptive evidence of the facts contained in it, by *sec.* 20, *chap.* 81, *Gen. Stat. ;* and by *sec.* 19 of the same chapter, it is authorized to be procured by any party desiring to perpetuate the *evidence* of any sale, &c.  But neither the affidavit nor its record are anywhere made necessary to the validity of the title of a purchaser at the sale.

V.   At the time when the mortgage foreclosed was made, in September, 1857, the title of record to the mortgaged prem-ises was in Mrs. Almira Brisbin, by whom, (her husband John B. Brisbin joining,) the mortgage was executed, and the title has never since been of record in the name of John B. Brisbin.

The mortgage was not recorded until December 9, 1870.

The foreclosure sale occurred February 4, 1871. Judgments against John B. Brisbin were docketed on May 25, 1860, August 7, 1868, May 25, 1870, August 26, 1871, January 11, 1872, and March 26, 1872.

Mrs. Almira Brisbin died December 3, 1863, intestate, leaving brothers and sisters, her heirs at law. It is contended, that upon her death, an estate for life, as tenant by courtesy, enured to the said John B. Brisbin, her husband, and that upon this life estate the three judgments, first docketed as above, became a lien, taking precedence of the mortgage, which was not recorded at the time of the docketing thereof.

But this is a mistake. Without a special provision, the lien, if any, of these judgments would certainly be postponed to the lien of the mortgage, though unrecorded, while by the provision of the statute upon this subject, it is only when the judgment is " against the person in whose name the title * * * appears of record, prior to the recording" of the mortgage, that its lien takes precedence of the lien of such mortgage. *Pub. Stat. chap.* 35, *sec.* 54 ; *Gen. Stat. chap.* 40, *sec.* 21. As the title never appeared of record in the name of John B. Brisbin, his right being only that of a tenant by courtesy, whatever lien was acquired upon his estate by the courtesy, was extinguished by the foreclosure.

As to the other judgments, docketed since the foreclosure and the expiration of redemption, we discover no foundation for the claim, (if one is made,) that they are in any respect a lien upon the premises in question, the title to which is in Mrs. Margaret M. Brisbin, the present wife of John B. Brisbin.

VI. So far then as the notice of sale, the publication of the same, the certificate of sale, and the judgments are concerned, the title of the defendants is clear. And there being no controversy as to the existence of the other facts, necessary to establish defendant's title, we are of opinion that the

Golcher v. Brisbin.

referee is entirely justified in his conclusion, that the defendants have a good title to the premises in fee, free and clear of all incumbrances, and that a deed from them to the plaintiff will vest in him a good title to the same.

The contract between the parties, as found by the referee, is, so far as important here, that defendants should deliver a good and sufficient warranty deed from them to plaintiff, together with an abstract of title to said real estate, showing a clear title to the same in the defendants, free and clear of all incumbrances, which deed it was agreed should vest in the plaintiff a clear title to said premises in fee, free and clear from all incumbrances. The referee has further found that defendants have submitted an abstract of title, showing title in them as aforesaid, and that defendants are now, and always have been, ready and willing to execute and deliver to plaintiff a deed of conveyance, all in pursuance of the contract aforesaid ; but that plaintiff is not satisfied with defendants' title, as disclosed in the abstract. The referee further finds that plaintiff, at the time of the execution of the contract aforesaid, paid to defendants two hundred dollars to apply on the purchase price of the premises in question, which money defendants were to refund, on demand, in case their title to the premises was not good and free and clear from incumbrance. This action having been brought to recover said sum of two hundred dollars and interest, after due demand by plaintiff, the referee was entirely right in reporting that plaintiff was not entitled to recover.

Judgment affirmed.